

# NUMBER 13-11-00359-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHARLIE PARK,                                                                     **Appellant,**

**v.**

THE STATE OF TEXAS,                                                       **Appellee.**

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez, Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant, Charlie Park, was convicted of indecency with a child, a second-degree felony. *See* TEX. PEN. CODE ANN. § 21.11 (West Supp. 2011). Appellant was sentenced to eight years in the Texas Department of Criminal Justice–Institutional Division, but the sentence was suspended and Park was placed on community

supervision. *See id.* § 12.33 (West Supp. 2011); TEX. CODE CRIM. PROC. art. 42.12 (West Supp. 2011). By two issues, Park argues that: (1) the jury charge contained egregious error because it instructed for a conviction that was not unanimous; and (2) the State failed to timely disclose exculpatory evidence. We affirm.[1]

## I. BACKGROUND[2]

Park was a high school teacher at Johnny Economedes High School in Edinburg, Texas. C.F., one of the minor complainants in this case, attended this high school but was not one of Park's students. C.F. was fourteen years old at the time of the alleged incidents, and was active on the tennis, golf, and soccer varsity teams at her school. C.F. met Park when he came to her tennis practice one day; Park was a friend of C.F.'s tennis coach. C.F. became more acquainted with Park when he offered to let her leave her sports equipment bags in his classroom so that she would not have to carry them with her throughout the day.

C.F. testified that she began spending her eighth period class in Park's classroom. Park did not have a class to teach during that time. Other female students would sit in the classroom during this period as well.[3] C.F. testified that Park would

---

[1] This case is before this Court for the third time; however, this is the first time we address its merits. In *Park v. State*, Cause No. 13-04-00683-CR, 2005 Tex. App. LEXIS 1646, at *2 (Tex. App.—Corpus Christi Mar. 3, 2005, no pet.), we dismissed Park's appeal for want of jurisdiction because it was untimely filed. In *Ex Parte Park*, Cause No. 13-06-00615-CR, 2009 Tex. App. LEXIS 3118, at *6 (Tex. App.—Corpus Christi May 7, 2009, no pet.), we affirmed the trial court's denial of Parks's application for post-conviction habeas relief. Here, we finally address the merits of Parks's brief because the trial court granted an out-of-time appeal on March 28, 2011 based on Texas Code of Criminal Procedure article 11.072, and Parks timely perfected his appeal after this order. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West 2011).

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[3] During trial, two other minor students made allegations that Parks was inappropriate with them, as well. However, neither of these students are parties to this appeal.

2

grade papers and joke around with the girls. She stated that he liked to talk about sports with them, but also about sex. He would ask the girls if they had started having sex yet, and would also discuss some of his own personal exploits.

C.F. testified that there were times when she and Park were in the classroom alone with the door locked. During one of these times, Park told C.F. that she "was very athletic" and "a good looking girl for her age." C.F. admitted that she liked this attention and that it made her feel good about herself. C.F. testified that Park would give her side hugs and rub her shoulders. The touching progressed when Park offered to massage her shoulders after she admitted being sore from weight-lifting. A few days later Park massaged her shoulders again but then moved his hand down her shirt and massaged her breast over her bra. Another time, C.F. testified that Park asked her to make a compact disc ("CD") of sexually explicit songs for him. As she was sitting at Park's teacher desk while they discussed the CD, Park came up behind her, began massaging her shoulders, and pressed his genitals against her back. On a different occasion, C.F. stated she told appellant that she was sore again from lifting weights. Park responded that he was sore, too. When C.F. asked where he was sore, Park grabbed her hand and placed it on his penis.

During trial, C.F. denied ever producing a written statement to officials about the affair while the matter was being investigated. However, during the direct examination of Child Protective Services employee Cesar Rodriguez, the parties learned that C.F. in fact handwrote a statement to CPS. Outside the presence of the jury, the defense took Rodriguez on voir dire to learn more about this statement. The statement follows:

> Yes Mr. Park was a friend of mine & we were spotted out of campus, but the relationship we had was nothing more than friends. Never at one

3

point did I feel that he was a little bit too friendly or anything he told me was sexual.

The State admitted that it had learned about the handwritten note the night before Rodriguez testified and received a copy of it during the trial. The defense claimed surprise, prosecutorial misconduct, and moved to suppress all of C.F.'s testimony, which was denied. After the jury was brought in again, the handwritten note was admitted into evidence by the prosecution. Although Plata's counsel had argued to the judge that it should have had the opportunity to cross-examine C.F. about this statement while she was on the stand, the defense did not elect to call her back to the stand.

Park was initially indicted with four separate offenses: sexual performance by a child (count one); sexual assault (count two); indecency with a child by contact (count three); and attempted sexual assault of a child (count four). However, only count three, indecency with a child by contact, was submitted to the jury. A jury convicted Park of indecency with a child by contact, sentenced him to eight years' imprisonment, but then probated his sentence and imposed community supervision. This appeal ensued.

## II. UNANIMOUS CONVICTION

### A. Applicable Law

By his first issue, Park contends his verdict was not unanimous. Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. *See Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (citing TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a), 37.02, 37.03, 45). This means that the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007).

4

In *Cosio v. State*, the Texas Court of Criminal Appeals outlined several ways a verdict could be non-unanimous. *See* 353 S.W.3d 766, 772 (Tex. Crim. App. 2011). For example, "non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *See id.* "Each of the multiple incidents individually establishes a different offense or unit of prosecution." *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005)). Park argues that this occurred here.

**B. Discussion**

Even though Park was indicted on four counts—sexual performance by a child (count one), sexual assault (count two), indecency with a child by contact (count three), and attempted sexual assault of a child (count four)—the only charge that was submitted to the jury was count three. The charge for count three advised the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 30th day of March in Hidalgo County, Texas, the defendant, [Park], did then and there engage in sexual contact with [C.F.], the victim, a child younger than 17 years and not his spouse, by then and there causing [C.F.] to touch part of the genitals of the defendant, with intent to arouse and gratify the sexual desire of the defendant, then you will find the defendant guilty of the offense of indecency with a child as charged in the indictment.

There was only one instance in the record where C.F. testified that she was forced to touch Park's genitals. C.F. stated that once, while in Park's classroom, she told appellant that she was sore from lifting weights. Parks then mentioned that he was sore, too. When C.F. asked where he was sore, Parks grabbed her hand and placed it on his penis.

Park asserts that there were two other events that jury members could have determined were also applicable to this scenario: (1) when Park allegedly massaged

5

C.F.'s breast and (2) when Park allegedly rubbed his genitals against C.F.'s back. However, we are unpersuaded by this argument. The charge clearly provided that defendant would be guilty if he caused C.F. "to touch part of the genitals of the defendant." Neither of the two incidents proposed by Park fit this scenario; they are instances wherein the defendant touched C.F., not the other way around. We therefore find appellant's concern about a "non-unanimous verdict" unfounded because there was no risk of the jury considering different acts upon which to convict on count three. Only one episode matched the charge and application paragraph—when Park grabbed C.F.'s hand and placed it on his penis. The verdict, therefore, was unanimous. We overrule Park's first issue.

### III. EXCULPATORY EVIDENCE

### A. Applicable Law

In his second issue, Park argues that the State failed to timely disclose exculpatory evidence which violated his due process rights to a fair trial. In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process whether the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The purpose of this rule is to avoid an unfair trial to the accused. *Id.* at 86–88. "A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." *Id.*

*Brady* applies to scenarios where the discovery of information is known to the prosecution but not to the defense. *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim.

6

App. 2011) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). "Consequently, '*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.'" *Id.* (citing *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990)).

A *Brady* violation occurs when three elements are met: (1) a prosecutor fails to disclose evidence; (2) which is favorable to the accused, and (3) which creates a probability sufficient to undermine confidence in the outcome of a proceeding. *Palmer v. State*, 902 S.W.2d 561, 563 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (citing *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992)). The remedy for a *Brady* violation is usually a new trial. *Id.* at 564 (explaining that a new trial can be conducted on punishment alone or both guilt and punishment). Where the prosecution, however, has not completely failed to disclose exculpatory evidence but rather disclosed it during trial, the remedy depends on whether the "disclosure came at a time when [the defendant] was no longer able to put the material to effective use at trial, and that the effect was to create a probability sufficient to undermine the confidence" in the outcome. *Id.* at 564–65.

**B.      Discussion**

Park claims that, prior to trial, he filed a "specific *Brady* request requesting all information, reports, and memorandums from Child Protective Services and the alleged victims in this case." When he learned that C.F. made a statement essentially recanting her outcry, he claimed a *Brady* violation.

We hold, however, that there was no *Brady* violation in this instance. We refer to

7

the trial record for a summary of what occurred. The following portion of the trial transcript occurred outside the presence of the jury, when C.F.'s statement was first disclosed at trial. The CPS investigator, Rodriguez, was taken on voir dire by Park's counsel:

| | |
|---|---|
| [Park's Counsel]: | Your Honor, may I read what has been tendered to us into the record? |
| The Court: | You may. |
| [Park's Counsel]: | I have been provided at this time, Your Honor, pursuant to the Court's clock at 2:15 PM, on June 6th, a statement . . . . In the handwritten note it says, "Yes, Mr. Park was a friend of mine and we were spotted out of campus but the relationship we had was nothing more than friends. Never at one point did I feel that he was a little bit too friendly or anything he told me was sexual." |
| | . . . . |
| | I think we were entitled to have this prior to the inception of trial. I think we should have been able to use this in cross examination of [C.F.]. I think it's completely exculpatory and I think we were entitled to this a long time ago, judge . . . . It's not fair to the Defense and now that [C.F.] is gone, we won't be able to cross examine on her. I honestly feel, judge, that this was deliberate as well . . . If I can find it, they should have had it, judge, especially, since the evidence was within their own care, custody and control. |
| The State: | Judge, it wasn't in my care, custody and control. . . . (speaking to Rodriguez) Have you ever given me a copy of that note? |
| Rodriguez: | No. |
| The Court: | Tell you what, . . . [C.F.] is not here. If you wish to label this an exhibit and admit it, I'll admit it. |
| The State: | I have no problem if he wants to call [C.F.] back and |

8

|  | ask her questions on it. |
|---|---|
|  | . . . . |
| The Court: | If you want to call her back, you can call her back. If you want to admit it without calling her back, we'll admit it without calling her back and you can wave it at them during closing. |
| [Park's Counsel]: | I will ask that it be admitted, Your Honor. |

The trial court admitted the evidence when the jury returned to the courtroom. Park's counsel chose not to call C.F. back to the stand. During closing, the defense attorney focused on the alleged "trial by ambush." He argued as follows:

> The defense is entitled to any statement which is exculpatory, or takes the blame away from my client, before trial. We were not provided with a statement, the written statement, that allegedly was never made as per the testimony of [complainant] . . . The defense was entitled to this before this trial began. Trial by ambush . . . Now, the State is going to come back, I think, and probably say, well, I could have brought her back from Huntsville and my suggestion would be, I have no obligation to do that.

The record shows that the State received a copy of the statement that day at trial. Thus, the prosecution did not withhold this exculpatory statement, because it was never in its possession. *See Brady*, 373 U.S. at 87; *Pena*, 353 S.W.3d at 810.

Further, the statement was not suppressed. *See Brady*, 373 U.S. at 87. C.F.'s statement, wherein she claimed that her relationship with Park was "nothing more than friends" and that nothing he told her "was sexual", was admitted into evidence and the defense was able to put it to "effective use" during closing arguments. *See Palmer*, 902 S.W.2d at 564–65. Park's counsel chose not to call C.F. back to question her about the statement. In his brief, Park argues that he would have looked "like the bad guy by recalling" the complainant. He also asserts that he would have liked the opportunity to "spring[] the statement on the complainant at the very moment she perjured herself."

9

However, the fact that Park's defense strategy or case presentation may have been affected does not detract from the fact that that the jury had the opportunity to fully consider the statement and still convicted the defendant.

In light of the foregoing facts, we hold that no *Brady* violation occurred, and we overrule Park's second issue.

## IV. CONCLUSION

Having overruled both of Park's issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
9th day of May, 2013.